## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| THALIA VOUCHIDES, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| JANIS THOMPSON, | § | |
| | § | |
| Intervenor, | § | CIVIL ACTION NO. H-10-2559 |
| | § | |
| v. | § | |
| | § | |
| HOUSTON COMMUNITY COLLEGE | § | |
| SYSTEM; COLLEEN ADAMS, | § | |
| individually and in her official capacity | § | |
| as Police Officer for Houston Community | § | |
| College System, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

This is a civil-rights lawsuit.  Thalia Vouchides and Janis Thompson, both students at the

Katy, Texas campus of Houston Community College System ("HCC"), allege that they were

wrongfully detained and retaliated against by Colleen Adams, an HCC police officer, because of

racial and national-origin discrimination.  They also allege that HCC had a policy or custom of

condoning its officers' constitutional violations through failing to supervise them adequately, which

was a cause of the constitutional injuries they claim.  Vouchides sued HCC and Adams, in both her

individual and official capacities, for violations of Title VI (42 U.S.C. § 2000d), 42 U.S.C. § 1981,

and 42 U.S.C. § 1983.  (Docket Entry No. 1).  Thompson intervened and asserted the same claims.

(Docket Entry No. 2).  HCC moved to dismiss, arguing that Vouchides's and Thompson's

complaints were conclusory and insufficient to state a claim.  (Docket Entry No. 5).  This court

granted the motion, without prejudice and with leave to amend, on December 16, 2010.  (Docket Entry No. 24).  Vouchides filed an amended complaint, (Docket Entry No. 32), and Thompson filed an amended intervenor complaint.  (Docket Entry No. 33).  HCC and Adams have moved to dismiss the amended complaints.  (Docket Entry No. 35, 39).  Vouchides and Thompson have responded, (Docket Entry Nos. 42, 43), and HCC has replied.  (Docket Entry No. 45).  The parties have also conducted some discovery, including depositions by Vouchides and Thompson of the HCC Chief of Police and of Adams.

Vouchides has moved for leave to file a supplemental response to the defendants' motion to dismiss.  (Docket Entry No. 54).  HCC responded in opposition, (Docket Entry No. 55), and Vouchides replied.  (Docket Entry No. 57).

Based on the pleadings, the motions and responses, and the applicable law, Vouchides's motion for leave to file a supplemental response is denied.  HCC's motion to dismiss is granted, without leave to amend.  Adams's motion to dismiss is granted as to the Title VI and § 1981 claims, without leave to amend.  Adams's motion to dismiss is granted as to the § 1983 excessive-force claim, with leave to amend.  Adams's motion to dismiss is denied as to the § 1983 claim for unlawful stop and detention.[1]  A second amended complaint and second amended complaint in intervention must be filed no later than October 14, 2011.

The reasons for these rulings are explained below.

## I.    Background

The factual allegations, which, if nonconclusory, this court must take as true for purposes

---

[1]    HCC also moved to quash a subpoena and for a protective order.  (Docket Entry No. 50).  Vouchides then withdrew the subpoena.  (Docket Entry No. 52).  The motion to quash and for a general protective order is moot.

of the motions to dismiss, come from Vouchides's amended complaint and Thompson's amended intervenor complaint. *See Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011). Vouchides, a Texas resident, is of Indian descent. (Docket Entry No. 32, ¶ 1). Thompson, also a Texas resident, is African-American. (Docket Entry No. 33, ¶ 2). Both were students at HCC's Katy campus. (Docket Entry No. 32, ¶ 10; Docket Entry No. 33, ¶ 10). HCC receives federal financial assistance, and Vouchides and Thompson received federal loans to attend HCC. (Docket Entry No. 32, ¶¶ 14–15; Docket Entry No. 33, ¶¶ 13–14).

Adams worked as a police officer for HCC. The amended complaint alleges that on February 9, 2010, Adams approached Vouchides. Adams said that she had received a complaint that Vouchides had made a terrorist threat. Vouchides denied making any such threat. Adams instructed Vouchides to accompany her to the HCC security office and ordered Vouchides to present her driver's license and green card. When Vouchides asked why this was happening, Adams responded that she had received a report that Vouchides was heard discussing murders.

In the security office, according to Vouchides, Adams pinned her arms behind her back, slammed her against an office wall, and physically searched her. Adams instructed Vouchides to turn over her purse. Vouchides did so, and Adams dumped the contents out onto a table and searched through them. (*Id.*, ¶¶ 17–28).

At some point, Vouchides sent a text request to her friend, Thompson, to meet her at the security office. When Thompson arrived, Adams asked her if she had reported that gas was missing from her truck. Thompson answered yes, and Adams responded, "That doesn't happen on this campus so that's not true." Adams then ordered Thompson to come into the office where Vouchides was. Adams ordered Thompson to write a statement about the missing gas. Several times, Adams,

in a threatening manner, ordered Thompson to write down what Vouchides had said in an earlier conversation.  (Docket Entry No. 33, ¶¶ 17–23).  When Vouchides asked Adams why she was being singled out, Adams responded, "Because you look like a terrorist."  Adams then asked Vouchides why she spoke with an accent.  Adams locked Vouchides and Thompson in the office for about an hour before releasing them.  (Docket Entry No. 32, ¶¶ 30–35).

Vouchides and Thompson e-mailed complaints about this incident to HCC's police department and other HCC personnel.  (Docket Entry No. 32, ¶ 36; Docket Entry No. 33, ¶ 30).  Vouchides and Adams allege that after these complaints, Adams followed them while they were on campus and "forcibly bumped into" and "forcibly brushed by" them.  (Docket Entry No. 32, ¶¶ 37–39; Docket Entry No. 33, ¶¶ 31–33).  Vouchides also e-mailed complaints about this conduct to HCC personnel.  (Docket Entry No. 32, ¶ 41).  There was a television-news story about the incident involving Adams, Vouchides, and Thompson.  Vouchides was interviewed as part of the television coverage.  On March 25, 2010, HCC cosmetology instructors used an overhead projector to play the television-news clip.  After this clip was played, students made derogatory comments to Vouchides as she walked to class, such as "get back on the boat" and "we don't want you here." (*Id.*, ¶ 45).  Students also made derogatory comments to Thompson, such as "why don't you go back to Africa."  (Docket Entry No. 33, ¶ 36).  Vouchides and Thompson allege that HCC administrators instructed them "not to attend classes for fear that [they] could be harmed or harassed by staff members and/or other students."  (Docket Entry No. 32, ¶ 47; *see also* Docket Entry No. 33, ¶ 38 (same)).  Vouchides and Thompson had to take their final exams without attending all the classes.  Both were told that they could get online tutoring or receive an "incomplete" grade for classes that they could not attend.  (Docket Entry No. 32, ¶¶ 48–50; Docket Entry No. 33, ¶¶ 39–41).

4

Vouchides and Thompson allege that Adams had a history of prior complaints.  In 2004, Adams was admonished after receiving three complaints for "going off on people."  (Docket Entry No. 32, ¶¶ 12–13).  On July 25, 2009, ten HCC police and security officers sent a letter to the police chief complaining about Adams's "damaging affect [sic]" on her coworkers because of "her continuing negative attitude, mannerisms, and police procedures displayed."   The officers complained that Adams's acts "constitute 'Conduct unbecoming an Officer'" and had led to a "hostile work environment."  The letter from the ten officers is attached to the amended complaint. It details the following conduct by Adams:

- talking on the HCC police radio to get information about other officers, including whether they were busy;

- finding unnecessary work for her fellow officers to complete and not completing her own work;

- asking an officer to valet park her patrol vehicle and on one occasion parking it illegally and then going off duty;

- parking a marked HCC patrol vehicle in a Texas State representative's marked parking spot on campus;

- failing to work with other officers, including by not sharing the patrol car; ordering her fellow officers to follow her directives even though she was not a supervisor; taking small-stress situations and making them larger; being "overly aggressive in dealing with the public"; arguing with other officers and reacting negatively to their suggestions; publicly disagreeing with officers on a call scene when she was a secondary responder; and challenging her fellow officers in a public forum.

These behaviors, the ten officers stated in the letter, created a hostile work environment.  (*Id.*, Ex. A).

The letter referred to "common knowledge within the department" that Adams had received "numerous complaints about her attitude and interaction with co-workers, students, faculty and staff," without public disciplinary action.  The letter referred to Adams being "overly aggressive

5

when dealing with the public" and referred to complaints received by other officers from students, faculty and staff "regarding her police contact procedure, negative attitude and lack of cooperation and general public interaction." (*Id.*, ¶ 5D). Nothing in this letter referred to any complaints against Adams for racially offensive or biased statements or conduct, or for wrongful stops or detentions, or for excessive force. Neither of the amended complaints allege any such prior complaints.

HCC conducted an internal investigation of the incident involving Adams, Vouchides, and Thompson. HCC concluded that Adams lacked probable cause to stop, question, and detain Vouchides. HCC also concluded that Adams retaliated against Vouchides after she had complained about Adams. (Docket Entry No. 32, ¶¶ 11, 43).

Vouchides sued HCC and Adams in July 2010. In August, HCC moved to dismiss. The following day, Thompson moved for leave to intervene, asserting the same claims. In December 2010, this court granted the motion to dismiss and allowed Vouchides to amend her complaint, allowing her additional time to do so and allowing some discovery. Both Vouchides and Thompson filed amended complaints, asserting the same claims for discrimination and retaliation in violation of Title VI, discrimination in violation of § 1981, and a deprivation of civil rights under § 1983. HCC filed renewed motions to dismiss and Adams moved to dismiss. The arguments and responses in those motions and related filings are addressed below.

## II.     Motion for Leave to File a Supplemental Response

Vouchides has moved for leave to file a supplemental response to the defendants' motions to dismiss. (Docket Entry No. 54). The basis for this motion is that she was unable to take the deposition of HCC police chief Greg Cunningham until after her response to those motions were due. "Had Chief Cunningham's deposition been taken before the pleading response deadline,"

Vouchides explains, "Plaintiff would have timely included Chief Cunningham's testimony in her response to [] support her causes of action." (*Id.*, ¶ 9). HCC opposes the motion on grounds of delay and on the fact that Cunningham's testimony, even if considered, still cannot defeat the motion to dismiss. (Docket Entry No. 55).

"[T]he purpose of a motion under Federal Rule 12(b)(6) is to test the formal sufficiency of the statement of the claim for relief; the motion is not a procedure for resolving a contest about the facts or the substantive merits of the plaintiff's case." 5B CHARLES ALAN WRIGHT, ET AL., FEDERAL PRACTICE AND PROCEDURE § 1356 (3d ed. 2004), *quoted in Baird ex rel. Baird v. Rose*, 192 F.3d 462, 468 n.6 (4th Cir. 1999); *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 516 (5th Cir. 1980). For that reason, "[i]n determining whether to grant a motion to dismiss, the district court must not go outside the pleadings and must accept all well-pleaded facts as true, viewing those facts most favorably to the plaintiff." *Scanlan v. Tex. A&M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003). The Fifth Circuit recognizes one exception to the rule that a district court may not look beyond the complaint in deciding the motion to dismiss. When documents "are referred to in the plaintiff's complaint and are central to the plaintiff's claim," a district court may consider those documents when they are attached to the motion to dismiss. *Id.* (interpreting *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir. 2000)). The deposition testimony that Vouchides seeks to introduce by way of supplement is not within the category of evidence that can be considered in testing the sufficiency of the complaint. The motion to supplement is denied.

This court has, however, considered the deposition testimony as additional facts that Vouchides and Thompson would plead if allowed to amend again, to determine if amendment would be futile. These additional allegations would not cure the deficiencies in the complaint. The

deposition testimony is offered to support Vouchides's position that HCC knew about Adams's history of misconduct and took no disciplinary or supervisory action in response. (*See* Docket Entry No. 54, Ex. 1, ¶¶ 3–5). The analysis of HCC's motion to dismiss explains why amending to add such facts would not change the conclusion that such an amendment would not cure the pleading deficiency and would therefore be futile.

## III.   The Legal Standard for a Rule 12(b)(6) Motion to Dismiss

Under Federal Rule of Civil Procedure 12(b)(6), a complaint should be dismissed if the plaintiff fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007), and *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949–50 (2009), the Supreme Court confirmed that Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Post-*Twombly* and -*Iqbal*, a complaint must contain "enough facts to state a claim to relief that is plausible on its face" to withstand a Rule 12(b)(6) motion. *Iqbal*, 129 S. Ct. at 1949. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Facial plausibility "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Twombly*, 550 U.S. at 555). Nor is facial plausibility "akin to a 'probability requirement'; rather, "it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556). Facial plausibility does require "the plaintiff [to] plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. "Where a complaint pleads facts that

are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

Under *Iqbal*, a complaint does not suffice when it merely "offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action[.]'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'" *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 557). For that reason, courts "do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Gentiello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010). Although "[a] complaint does not need detailed factual allegations, [it] must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true raise a right to relief above the speculative level." *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009) (internal quotation marks omitted).

When a complaint fails to state a claim, a district court generally should provide at least one chance to amend under Rule 15(a) before dismissing the action with prejudice. *See Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002) ("district courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case"); *see also United States ex rel. Adrian v. Regents of the Univ. of Cal.*, 363 F.3d 398, 403 (5th Cir. 2004) ("Leave to amend should be freely given, and outright refusal to grant leave to amend without a justification . . . is considered an abuse of discretion." (internal citation omitted)). Nevertheless, "[d]enial of leave to amend may be warranted for undue delay, bad faith or dilatory motive on the part of the movant, *repeated failure to cure deficiencies*, undue prejudice to the opposing party, or *futility of a proposed amendment*." *United States ex rel. Steury v. Cardinal*

*Health, Inc.*, 625 F.3d 262, 270 (5th Cir. 2010) (emphasis added).  "[A]t some point a court must decide that a plaintiff has had fair opportunity to make his case; if, after that time, a cause of action has not been established, the court should finally dismiss the suit." *Schiller v. Physicians Resource Grp. Inc.*, 342 F.3d 563, 567 (5th Cir. 2003) (quoting *Jacquez v. Procunier*, 801 F.2d 789, 792 (5th Cir. 1986)).  For that reason, a district court has broad discretion to dismiss a complaint without leave to amend "where the plaintiff has previously been granted leave to amend [to cure pleading deficiencies] and has subsequently failed to add the requisite particularity to its claims[.]" *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1007 (9th Cir. 2009); *see also Carroll v. Fort James Corp.*, 470 F.3d 1171, 1175 (5th Cir. 2006) (affirming a district court's dismissal for failure to state a claim without leave to amend where the court "instructed [the plaintiffs] to plead their fraud claim with greater particularity, but the amended complaint was still woefully inadequate").

## IV.   Analysis

### A.   Title VI

Title VI of the Civil Rights Act of 1964 provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."  42 U.S.C. § 2000d.  "[O]nly public and private entities can be held liable under Title VI." *Price ex rel. Price v. La. Dep't of Ed.*, 329 F. App'x 559, 561 (5th Cir. 2009) (per curiam) (citing *Shotz v. City of Plantation*, 344 F.3d 1161, 1171 (11th Cir. 2003)); *United States v. Baylor Univ. Med. Ctr.*, 736 F.2d 1039, 1044 n.9 (5th Cir. 1984)); *accord Whitfield v. Notre Dame Middle Sch.*, 412 F. App'x 517, 521 (3d Cir. 2011); *Buchanan v. City of Bolivar, Tenn.*, 99 F.3d 1352, 1356 (6th Cir. 1996).  Title VI claims against Adams cannot proceed.

An entity such as HCC cannot be held vicariously liable under Title VI.   To the extent that Vouchides and Thompson base their claims against HCC on a theory of vicious liability for Adams's actions, (*see* Docket Entry No. 32, ¶ 56; Docket Entry No. 33, ¶ 47), dismissal is required.   The courts have consistently concluded that there is no claim for vicarious liability under Title VI.   *See Griffin v. Spokane Pub. Sch. Dist. No. 81*, No. CV-419-LRS, 2011 WL 613401, at *1 (E.D. Wash. Feb. 15, 2011); *Santos v. Peralta Cmty. College Dist.*, No. C-07 5227 EMC, 2009 WL 3809797, at *7 (N.D. Cal. Nov. 13, 2009);  *Manuel v. City of Bangor*, No. 09-CV-339-B-W, 2009 WL 3398489, at *3 (D. Me. Oct. 21, 2009); *Hurd v. Del. State Univ.*, No. 07-117-MPT, 2008 WL 4369983 (D. Del. Sep. 25, 2008); *Goonewardena v. New York*, 475 F. Supp. 2d 310, 328–29 (S.D.N.Y. 2007); *Langadinos v. Appalachian Sch. of Law*, No. 1:05CV00039, 2005 WL 2333460, at *10 (W.D. Va. Sep. 25, 2005).  As the *Santos* court explained, "[T]he Supreme Court has expressly held that an entity may not be held vicariously liable for an employee's conduct pursuant to Title IX."  2009 WL 3809797, at *7 (citing *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 285 (1998)).  Because Titles VI and IX "operate in the same manner," *Gebser*, 524 U.S. at 286, an entity may not be held vicariously liable for an employee's conduct under Title VI.  *E.g.*, *Santos*, 2009 WL 3809797, at *7. The Title VI claims to be considered are that HCC as an entity discriminated and retaliated against Vouchides and Thompson.

### 1.    Discrimination

To state a claim for Title VI discrimination, a plaintiff must, among other things, "plead facts in support of *intentional* discrimination." *Price*, 329 F. App'x at 561 (citing *Alexander v. Sandoval*, 532 U.S. 275, 281 (2001)) (emphasis added); *accord, e.g.*, *Pocono Mountain Charter Sch. v. Pocono Mountain Sch. Dist.*, No. 10-4478, 2011 WL 3737443, at *5 (3d Cir. Aug. 25, 2011) (citing

*Alexander v. Choate*, 469 U.S. 287, 293–94 (1985)); *Burton v. City of Belle Glade*, 178 F.3d 1175, 1202 (11th Cir. 1999). A complaint that fails to "provide specific allegations of acts that were taken with discriminatory intent" does not state a claim for Title VI discrimination. *Muthukumar v. Univ. of Tex. at Dallas*, No. 3:10-CV-0115-B, 2010 WL 5287530, at *5 (N.D. Tex. Dec. 27, 2010); *see also Goonewardena*, 475 F. Supp. 2d at 328–29.

In the amended complaints, Vouchides and Thompson allege that HCC discriminated against them when it instructed them not to attend class after they complained about Adams's retaliation and other students' alleged racial and retaliatory comments following the publicity over the incident. (Docket Entry No. 32, ¶¶ 63–65, 71–72; Docket Entry No. 33, ¶¶ 53–55, 61). But Vouchides and Thompson have pleaded no facts showing that HCC's instruction was motivated by discriminatory intent. To the contrary, they allege that HCC instructed them not to attend classes "for safety purposes." (Docket Entry No. 32, ¶ 63; Docket Entry No. 33, ¶ 53). By their own pleadings, they have failed to state a Title VI discrimination claim against HCC. As a result, HCC's motion to dismiss this claim is granted. Because Vouchides and Thompson were previously provided an opportunity to amend and have pleaded facts that are inconsistent with the claim, leave to amend is denied on the basis that it would be futile.

### 2.    *Retaliation*

Title VI prohibits retaliation for exercising a right protected by that title, such as complaining about discriminatory behavior. 34 C.F.R. § 100.7(e). "To establish a *prima facie* case of unlawful retaliation, plaintiff must show (1) that she engaged in protected activity, (2) that she suffered a material adverse action, and (3) that a causal link exists between the protected activity and the adverse action." *Bisong v. Univ. of Houston*, 493 F. Supp. 2d 896, 912 (S.D. Tex. 2007) (citing

12

*Peters v. Jenney*, 327 F.3d 307, 320 (4th Cir. 2003)).

Vouchides and Thompson clearly state a claim that Adams retaliated against them after they complained to HCC about her discriminatory behavior.  The only allegation as to HCC's retaliation against them following their complaints over the Adams incident is the instruction that they not attend class.  (*See* Docket Entry No. 32, ¶ 87; Docket Entry No. 33, ¶ 74).[2]  As noted, Vouchides and Thompson allege that HCC gave this instruction out of concern for their safety after other students made racially offensive comments to them following their complaints about Adams.  The Title VI retaliation claim must be dismissed.  Because Vouchides and Thompson were previously provided an opportunity to amend and have pleaded facts that are inconsistent with the claim, leave to amend is denied on the basis that it would be futile.

### C.       42 U.S.C. § 1981

"Section 1981 ensures that all persons in the United States have the same right to make and enforce contracts and prevents impairment of those rights by government and non-government actors."  *Meyers v. La Porte Indep. Sch. Dist.*, 277 F. App'x 333, 335 (5th Cir. 2007).  This section provides an independent cause of action when a plaintiff is suing a private actor.  *See Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 731–32 (1989); *Oden v. Oktibbeha Cnty., Miss.*, 246 F.3d 458, 462–63 (5th Cir. 2001) (confirming *Jett*'s holding post-Civil Rights Act of 1991).  A plaintiff alleging racial discrimination against a state actor must assert that claim under § 1983.  *Meyers*, 277 F. App'x at 335; *see also Oden*, 246 F.3d at 463 ("Section 1983 remains the only provision to expressly create a remedy against persons acting under color of state law.").  It is undisputed that

---

[2]    To the extent that Vouchides and Thompson claim that the cosmetology instructors' showing of a news clip about this incident and their classmates' subsequent discriminatory comments constituted retaliation, (*see* Docket Entry No. 32, ¶¶ 44–46; Docket Entry No. 33, ¶¶ 36–37), such a claim against HCC would be based on vicarious liability and would fail for the reasons previously stated.

HCC and Adams, acting in her official capacity, are state actors. Vouchides and Thompson cannot assert a separate claim for relief under § 1981 against HCC or against Adams in her official capacity. Because there is no basis for relief under § 1981 as a matter of law, these claims are dismissed with prejudice and without leave to amend.

The Fifth Circuit recognizes, however, that a plaintiff may be able to assert a § 1981 suit against a government employee acting in her individual capacity. *See Oden*, 246 F.3d at 464. To state a claim for relief under § 1981, a plaintiff must allege "(1) that [she] is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) the discrimination concerns one or more of the activities enumerated in the statute." *McNulty v. J.C. Penney Co.*, 305 F. App'x 212, 217 (5th Cir. 2008) (quoting *Green v. State Bar of Tex.*, 27 F.3d 1083, 1086 (5th Cir. 1994)). One such activity is the right "to make and enforce contracts . . . to the full and equal benefit of all laws and proceedings and for the security of persons and property as is enjoyed by white citizens[.]" 42 U.S.C. § 1981(a). The "term 'make and enforce contracts' includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." *Id.* § 1981(b). A conclusory allegation that the right to "make and enforce contracts" has been violated is insufficient. Instead, a plaintiff must (1) "identify the content of the contract at issue," (2) identify "the particular contractual rights" that were allegedly modified by the defendant's actions, and (3) plead facts showing that the defendant's actions were motivated by discriminatory intent. *Grambling Univ. Nat'l Alumni Ass'n v. Bd. of Supervisors for the La. Sys.*, 286 F. App'x 864, 870 (5th Cir. 2008) (per curiam); *cf. Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476 (2006) ("Any claim brought under § 1981, therefore, must initially identify an impaired 'contractual relationship, § 1981(b),

under which the plaintiff has rights.").

Giving an extremely liberal construction to the claims, both Vouchides and Thompson assert that Adams, through her discriminatory actions against them, modified their contract to attend HCC. (*See* Docket Entry No. 32, ¶¶ 91, 94–95; Docket Entry No. 33, ¶¶ 78, 81–82).  In their responses to the motion to dismiss, they state that "Defendants' actions and/or conduct affected the basic terms of [Vouchides's and Thompson's] contract to attend [HCC]."  (Docket Entry No. 42, ¶ 33; Docket Entry No. 43, ¶ 35).  Even assuming that Vouchides and Thompson successfully pleaded that Adams was motivated by discriminatory intent, they fail to identify the specific contract or contract terms that Adams modified through her actions.  *See Grambling Univ.*, 286 F. App'x at 870; *Domino's Pizza*, 546 U.S. at 476.  Vouchides and Thompson have failed to state a § 1981 claim against Adams.[3]  Adams's motion to dismiss this claim against her in her individual capacity is granted. Leave to amend is denied, because Vouchides and Thompson were previously provided an opportunity to amend, the information as to their "contract" is readily available to them, and their amended complaints remain inadequate.

**D.    42 U.S.C. § 1983**

*1.    Adams*

"To state a claim under § 1983, a plaintiff must allege facts showing that a person, acting under color of state law, deprived the plaintiff of a right, privilege or immunity secured by the United States Constitution or the laws of the United States."  *Bryant v. Military Dep't of Miss.*, 597 F.3d 678, 686 (5th Cir. 2010).  Adams does not dispute that she is a state actor for § 1983 purposes.

---

[3]   This court notes that had Vouchides and Thompson properly pleaded their § 1981 claims as § 1983 claims with an underlying § 1981 violation, the same analysis would require dismissal of those claims.

*See generally, e.g.*, *Ballard v. Wall*, 413 F.3d 510, 518 (5th Cir. 2005).  The dispute centers on whether Adams violated Vouchides's and Thompson's constitutional rights.  They each contend that Adams unlawfully detained them and used excessive force against them, both in violation of the Fourth Amendment.  (Docket Number No. 32, ¶ 101; Docket Number No. 33, ¶ 88).

*a.*      *Unlawful Detention*

A claim of unlawful detention "implicate[s] the Fourth Amendment's proscription against unreasonable seizures."  *Peterson v. City of Fort Worth, Tex.*, 588 F.3d 838, 845 (5th Cir. 2009).  To satisfy the Fourth Amendment, "[a] search and seizure of a person must be based on probable cause particularized with respect to that person unless a constitutionally adequate substitute for probable cause exists."  *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 208 (5th Cir. 2009).  One such substitute is a so-called *Terry* stop.  The Supreme Court described the standard for a lawful *Terry* stop, as follows:

> [A] law enforcement officer's reasonable suspicion that a person may be involved in criminal activity permits the officer to stop the person for a brief time and take additional steps to investigate further.  To ensure that the resulting seizure is constitutionally reasonable, a *Terry* stop must be limited.  The officer's action must be justified at its inception, and reasonably related in scope to the circumstances which justified the interference in the first place.  For example, the seizure cannot continue for an excessive period of time, or resemble a traditional arrest.

*Hiibel v. Sixth Judicial Dist. Court of Nev., Humboldt Cnty.*, 542 U.S. 177, 186 (2004) (internal quotation marks, citations, and alterations omitted).  In this case, the allegations are that Adams did not merely subject Vouchides to a limited stop.  Instead, the allegations are that Adams, without probable cause, required Vouchides, then Thompson, to go into the security office and to remain there in a locked room for approximately one hour.

16

Adams argues that the unlawful-detention claim "fails to give the Defendants fair notice of the claims asserted against them[.]" (Docket Entry No. 39, ¶ 22). The argument is unpersuasive. The factual allegations are that Adams lacked any reasonable basis to subject Vouchides to an initial stop or a longer detention. (*See* Docket Entry No. 32, ¶¶ 18–20, 30–32). *See United States v. Pack*, 612 F.3d 341, 364 (5th Cir. 2010). Adams then locked Vouchides in a room for an hour. (Docket Entry No. 32, ¶¶ 30–34). The allegations are that Adams stopped and detained Vouchides because Adams thought she "look[ed] like a terrorist," despite the lack of any legitimate reason to suspect that Vouchides had engaged, was engaging, or would soon engage in terrorist activities. Vouchides has stated a viable § 1983 claim for an unlawful stop and detention.

As for Thompson, the allegations are that Vouchides asked her to come to the security office where she was being detained. When Thompson arrived, Adams immediately asked her if she had reported that gas was missing out of her truck. When Thompson said yes, Adams responded that Thompson was lying and instructed her to enter a room in the security office. (Docket Entry No. 33, ¶¶ 17–20). The allegations are that Adams had no reasonable basis to suspect that Thompson had filed a false report with the HCC police. Adams then allegedly repeatedly ordered Thompson to make a written statement about a previous conversation she had with Vouchides. (*Id.*, ¶ 23). Adams detained Thompson for over an hour, with Vouchides, in a locked room in the security office. (*Id.*, ¶¶ 27–28). As *Pack* makes clear, the officer's actions after an initial detention must be reasonably related to the circumstances that justified that detention. *See* 612 F.3d at 364. The complaints include factual allegations that the hour-long detention was both unjustified and unrelated to the initial seizure. Thompson has stated a viable § 1983 claim for unlawful detention. Adams's motion to dismiss these claims is denied.

17

b.      *Excessive Force*

"To establish a claim of excessive force under the Fourth Amendment, plaintiffs must demonstrate: (1) injury, (2) which resulted directly and only from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable." *Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009) (internal quotation marks omitted).  "[W]hether the force used is 'excessive' or 'unreasonable' depends on 'the facts and circumstances of each particular case.'" *Id.* (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)).  "Factors to consider include 'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Id.* (quoting *Graham*, 490 U.S. 396).

In *Wilkins v. Gaddy*, 130 S. Ct. 1175 (2010) (per curiam), the Supreme Court recently rejected the proposition that a plaintiff could not state a claim for excessive force if she alleged only a *de minimis* injury.  *See id.* at 1180.  The Court explained that the "core judicial inquiry" in analyzing an excessive-force claim is "not whether a certain quantum of injury was sustained, but rather whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id.* at 1178.  The *Gaddy* Court did not upset the Fifth Circuit's requirement that the plaintiff allege *some* injury arising from the officer's use of excessive force.  *See Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir. 2001); *see also Chambers v. Pennycook*, 641 F.3d 898, 905 n.2 (8th Cir. 2011) (implying that *Gaddy* does not take a stand on this question and citing *Glenn*).  Rather, the *Gaddy* Court explained that, for example, "[a]n inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without *serious* injury." 130 S. Ct. at 1178–79 (emphasis

18

added); *cf. Chambers,* 641 F.3d at 905 n.2.

Vouchides asserts that Adams used excessive force when she "slammed" Vouchides against the security office wall.  Both Vouchides and Thompson assert that Adams used excessive force by bumping into them and brushing by them when Adams followed them on campus after they complained about the incident in the security office.  Neither Vouchides and Thompson, however, allege any injury at all from these acts.  There is only a general and conclusory allegation that "[a]s a consequence of Defendants' misconduct, your Plaintiff suffered injuries and damages."  (Docket Entry No. 32, ¶ 119; *see also* Docket Entry No. 33, ¶ 103 (same)).  Even assuming that Vouchides had alleged some injury from being "slammed" against the wall, it is unclear that any excessive force claim could arise from the allegations that Adams "bumped" and "brushed" against Vouchides and Thompson.  *See Gaddy*, 130 S. Ct. at 1179 ("An inmate who complains of a 'push or shove' that causes no discernible injury almost certainly fails to state a valid excessive force claim.").  Adams's motion to dismiss the excessive-force claims against her is granted.  Leave to amend is granted for this claim.

### 2.    *HCC*

Vouchides and Thompson each allege that the constitutional deprivations they suffered were caused by a custom or policy of HCC.[4]  Vouchides alleges that HCC "did not adequately monitor, supervise and/or discipline Officer Adams giving rise to an official and/or unofficial policy or custom condoning her misconduct and consistently [sic] lack of compliance with supervision policies."  (Docket Entry No. 32, ¶ 110).  Vouchides and Thompson allege that the "system,

---

[4]    As HCC correctly points out, (Docket Entry No. 35, ¶ 18), Vouchides and Thompson cannot assert a § 1983 claim against it based on vicarious liability for Adams's conduct.  *See Peterson*, 588 F.3d at 847.

practice, procedure and/or policy of Houston Community College System [that] caused and/or contributed to the injuries and damages complained of herein by" them, (*id.*, ¶ 106; Docket Entry No. 33, ¶ 92), are that "[p]ersonnel, including Officer Adams, were taught and/or allowed to believe that their acts and/or omissions were acceptable even though the acts and/or omissions violated due process, free speech and constitutional standards." (Docket Entry No. 32, ¶ 107; Docket Entry No. 33, ¶ 93). Finally, Vouchides and Thompson allege that the "[p]olicy, procedure, practice, custom, habit, training, supervision and disciplinary irregularities and/or failures of Houston Community College System with respect to its employees, servants and agents, including, but not limited to, Officer Adams, were of such a persistent and continuously rooted nature that they were in fact the operative policies of Houston Community College System." (Docket Entry No. 32, ¶ 115; Docket Entry No. 33, ¶ 99). HCC moves to dismiss the municipal liability claim on the bases that Vouchides and Thompson have failed (1) to "identif[y] an official policymaker, an official policy, or the violation of rights"; (2) to present any "allegation of an official policy or custom which condoned the alleged conduct of Adams"; and (3) to "show that a policymaker knew of, or was deliberately indifferent to, the policy or custom." (Docket Entry No. 35, ¶ 18). HCC argues that, in essence, the § 1983 claim against it is based on vicarious liability.

"To establish municipal liability under § 1983, a plaintiff must show that (1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right." *Peterson*, 588 F.3d at 847. Official policy "usually exists in the form of written policy statements, ordinances, or regulations, but it may also arise in the form of a widespread practice that is so common and well-settled as to constitute a custom that fairly represents municipal policy." *Id.* (internal quotation marks omitted). "A customary policy consists

20

of actions that have occurred for so long and with such frequency that the course of conduct demonstrates the governing body's knowledge and acceptance of the disputed conduct." *Zarnow v. City of Wichita Falls, Tex.*, 614 F.3d 161, 169 (5th Cir. 2010); *see also Jackler v. Byrne*, — F.3d —, 2011 WL 2937279, at *8 (2d Cir. 2011) ("Deliberate indifference to claims of such civil rights violations—tantamount to a custom or policy sufficient to support municipal liability under § 1983—may be inferred from a municipality's lack of appropriate response to repeated complaints of such violations."). The repeated complaints of violations "require[] similarity and specificity; prior indications cannot simply be for any and all 'bad' or unwise acts, but rather must point to the specific violation in question." *Peterson*, 588 F.3d at 851 (internal quotation marks and alteration omitted). A plaintiff must "demonstrat[e] actual or constructive knowledge [of the custom] of the policy-making official for the municipality." *Pineda v. City of Houston*, 291 F.3d 325, 330 & n.13 (5th Cir. 2002); *accord Garza v. Harris Cnty., Tex.*, No. H-09-4058, 2011 WL 3925020, at *4 (S.D. Tex. Sep. 7, 2011).

An initial problem with the amended complaints is that they do not allege a policymaker. In *Zarnow*, the Fifth Circuit stated, "*Upon finding a policymaker*, we must next consider whether the allegedly unconstitutional action constitutes a 'custom or policy' of the municipality." 614 F.3d at 168 (emphasis added). Thompson's amended complaint fails to identify any policymaker. Vouchides's amended complaint similarly fails to identify the policymaker, save for an allegation that the practice, policy, or custom "was permitted, ratified, and/or allowed by policy makers at Houston Community College System." (Docket Entry No. 32, ¶ 108). Although the complaints have been amended after this deficiency was identified in HCC's original motion to dismiss, (*see* Docket Entry No. 5, ¶ 12), it was not addressed in the amended complaints or the briefs Vouchides

21

and Thompson filed in response to the renewed motions to dismiss.

A second, and more serious, problem is that there is no sufficient allegation that HCC was aware of a pattern of prior incidents that could show its knowledge and acceptance of the challenged conduct. "A pattern requires similarity and specificity; prior indications cannot simply be for any and all 'bad' or unwise acts, but rather must point to the specific violation in question." *Peterson*, 588 F.3d at 851 (internal quotation marks and alteration omitted). "Proof of a single instance of unconstitutional activity is not sufficient for § 1983 municipal liability." *Valentine Foundation v. Uphoff*, 211 F. App'x 276, 278 (5th Cir. 2006) (citing *McConney v. City of Houston*, 863 F.2d 1180, 1184 (5th Cir. 1989)). "Furthermore, a 'handful' of instances do not constitute a pervasive custom or practice." *Garza*, 2011 WL 3925020, at *4 (citing *Pineda*, 291 F.3d at 329); *Saenz v. Dallas Cnty. Cmty. College Dist.*, No. 3:10-CV-742-O, 2011 WL 1935742, at *8 (N.D. Tex. May 16, 2011).

To survive a motion to dismiss on an unconstitutional unwritten policy or customary-practice claim, a plaintiff must plead sufficient facts to allow the reasonable inference that there was a "pattern of misconduct." *Oporto v. City of El Paso*, No. EP-10-CV-110-KC, 2010 WL 3503457, at *6 (W.D. Tex. Sep. 2, 2010). In *Oporto*, the district court found that the plaintiffs had pleaded facts showing repeated prior incidents to support an inference that the defendant city knew of and condoned excessive force by its police officers, sufficient to survive a motion to dismiss. The *Oporto* plaintiffs alleged, in varying detail, 32 prior incidents in which officers had used excessive force. *Id.* By contrast, identifying isolated events is insufficient to establish existence of a policy, pattern, practice, or custom at the motion-to-dismiss stage. *Washington v. City of Arlington, Tex.*, No. Civ.A 405CV175BE, 2005 WL 1502150, at *4 (N.D. Tex. June 23, 2005). Conclusory allegations of the existence of an unwritten policy, practice, or custom are also insufficient. *See Von*

22

*Eschen v. League City Texas*, 233 F.3d 575 (table), 2000 WL 1468838, at *1 (5th Cir. Sep. 8, 2000);

*Schelsteder v. Montgomery Cnty., Tex.*, No. H-05-0941, 2006 WL 1117883, at *8 (S.D. Tex. Apr.

21, 2006); *see also Barr v. Gee*, No. 11-10104, 2011 WL 3585815, at *7 (11th Cir. Aug. 16, 2011)

(affirming the district court's dismissal under Rule 12(b)(6) because the plaintiff "offered no factual

allegations to support a plausible inference that such a custom existed").

The precedents make clear that to state a claim for relief against a municipality for an

unwritten policy or custom of condoning unconstitutional acts by a police officer, a plaintiff must

plead prior incidents of *similar* acts.  *See Oporto*, 2010 WL 3503457, at *6; *see also, e.g.*, *Peterson*,

588 F.3d at 851.  Vouchides and Thompson alleged that HCC had received complaints about

Adams's behavior dating back to 2003 and that she had been admonished by her supervisors in 2004

after receiving three complaints that year about her "temperament for 'going off on people.'" (*Id.*,

¶¶ 12, 13; Docket Entry No. 33, ¶ 11).  There is no suggestion that "going off on people" meant

conduct that could include unlawful stops and detentions of members of the public or the use of

excessive force.

The letter from ten of Adams's fellow police officers attached to the amended complaint

focuses on complaints of how difficult Adams was to work with.  (*See* Docket Entry No. 32, Ex. A;

Docket Entry No. 33, Ex. A).  The letter is devoid of any suggestion that Adams had engaged in

unconstitutional activities similar to those alleged here, excessive force and unwarranted stops and

detentions.  Instead, the letter focuses on complaints about her workplace behaviors, including not

sharing the patrol car, asking dispatch about other officers, asking other officers to complete her

work, directing her fellow officers as if she was a supervisor, and criticizing her fellow officers in

public.  The only potentially relevant reference in the letter is a general one to "common knowledge

23

within the department that Officer Adams has received numerous complaints about her attitude and interaction with co-workers, students, faculty and staff." But this general reference does not suggest any complaints of prior unconstitutional conduct or conduct similar to the actions alleged in this case. And there is no reference to any complaints against, or concerns about, other HCC police officers. That also distinguishes this case from *Oporto*, in which the plaintiffs provided some factual detail about prior similar incidents involving different officers.

Considering the deposition testimony attached to Vouchides's supplemental response, (Docket Entry No. 54), as an indication of what Vouchides and Thompson could add to their complaints if leave to amend was granted again, there is no basis to provide such an opportunity to do so. Chief Cunningham's deposition testimony does not provide any basis to allege that HCC was aware of complaints about Adams engaging in such conduct as excessive force or unlawful stops or detentions.[5] Adams's deposition testimony, considered for the same purpose, is similarly unavailing. Adams testified that the culture within the HCC police force was one that encouraged officers not to do their jobs. She testified that the HCC police dispatch "didn't know what [officers] were doing half the time." (*Id.*, Ex. 3, at 83–85). The testimony does not suggest any culture condoning such unconstitutional conduct as unlawful stops or detentions or using excessive force. There is no basis for additional factual allegations that could be added from either deposition to support an inference that HCC had received prior complaints about Adams, or other officers, similar to the constitutional violations alleged here. *See Peterson*, 588 F.3d at 851; *Oporto*, 2010 WL

---

[5]   Chief Cunningham stated that internal affairs, after investigating the Vouchides incident, made "some findings against Colleen Adams," but he did not state what those findings were. (Docket Entry No. 54, Ex. 2, at 73). He acknowledged that Adams's record contained "some complaints that predated this incident," but he did not identify any complaints of excessive force or unlawful stops or detentions. (*Id.*, at 81). He conceded that "Adams had a history of conduct issues," but he did not state that they related to constitutional violations like the ones alleged here, as opposed to the workplace disputes detailed in the ten officers' letter. (*Id.*, at 93).

3503457, at *6.

Vouchides and Thompson have pleaded "a single instance of unconstitutional activity." *Valentine Foundation*, 211 F. App'x at 278. That single instance fails to state a claim for § 1983 municipal liability under these circumstances. HCC's motion to dismiss this claim is granted. Leave to amend is denied because Vouchides and Thompson were previously given an opportunity to amend, after discovery, and have failed to correct the pleading deficiencies.

## IV. Conclusion

Vouchides's motion for leave to file a supplemental response to the motion to dismiss is denied. (Docket Entry No. 54). HCC's motion to dismiss Vouchides's and Thompson's complaints is granted in full, without leave to amend. (Docket Entry No. 35). Adams's motion to dismiss Vouchides's and Thompson's complaints is granted as to the claims under Title VI and § 1981, without leave to amend. Adams's motion to dismiss is granted as to the claim for excessive force, but with leave to amend. Adams's motion to dismiss is denied as to the claim for unlawful stop and detention. (Docket Entry No. 39). HCC's motions to quash and for a protective order are denied as moot. (Docket Entry No. 50). A second amended complaint and second amended complaint in intervention may be filed no later than **October 14, 2011**.

SIGNED on September 30, 2011, at Houston, Texas.

Lee H. Rosenthal
United States District Judge

25